[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11536
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 6, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00374-CV-F-S

JERRY LEE CARTER,

Plaintiff-Appellant,

versus

TOBY BOWMAN,
COMMUNICATION SERVICE, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 6, 2006)

**ON PETITION FOR REHEARING**

Before ANDERSON, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

We vacate our prior opinion in this case filed on December 9, 2005, and substitute in its place the following opinion.[1]

Jerry Lee Carter appeals *pro se* the district court's grant of summary judgment to the defendants, Toby Bowman and Communications Services, Inc. (collectively, "CSI"), on his civil action alleging disparate treatment on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. We affirm.

Carter worked for CSI installing cable and telephone lines. When he began his employment, Carter was informed of and agreed to abide by CSI's substance abuse policy, which required all employees who reported an on-the-job injury to submit to a drug test. Carter acknowledged that his employment was conditioned upon his willingness to submit to drug testing, and that if he failed to submit to or cooperate with any such testing, this would result in disciplinary action including termination.

Carter was struck by lightning while working for CSI. He immediately reported the accident to CSI and was taken to an occupational health clinic. At the clinic, he was told he needed to take a drug test pursuant to CSI's substance abuse policy. Carter was informed that if he failed to submit to a drug test, he would

---

[1]The petition for rehearing is granted.

jeopardize his employment. Carter left the clinic without taking a drug test and went to an emergency room instead. Carter never took a drug test at the emergency room, nor was he was treated at the emergency room.

The following day, CSI terminated Carter's employment pursuant to the policy because it believed he refused to submit to a drug test. In his complaint, Carter alleged that he was discriminated against because similarly-situated employees outside his protected class were not required to submit to drug testing after reporting work-related injuries.

On appeal, Carter argues there are facts in dispute that merit the denial of summary judgment. Carter argues that, despite Bowman's statement to the contrary, he never refused to take a drug test. He explains he did not take a drug test in a reasonable time after the accident because he was terminated the day after his accident. Furthermore, Carter submits that one month before he was terminated, Bowman commented that Carter's brother must be a drug dealer because he was driving an expensive vehicle. Carter argues that this is direct evidence of discrimination. He submits that this direct evidence makes CSI's proffered explanation for his termination unworthy of belief, and therefore, he does not need any more evidence to prove discrimination.

"We review a grant of summary judgment *de novo*, using the same legal

3

standard as the district court." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1184 (11th Cir. 1997). Summary judgment is proper if the pleadings, depositions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

Title VII prohibits discrimination on the basis of race color, religion, sex or national origin in various employment practices. 42 U.S.C. § 2000e-2; *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001). Plaintiffs bear the burden of proving the employer's unlawful discrimination. *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). A

plaintiff may establish a claim through the introduction of direct evidence or circumstantial evidence that creates an inference of discrimination. *Id.* For direct evidence, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of race constitute direct evidence of discrimination." *Bass*, 256 F.3d at 1105 (internal quotations omitted). In reviewing circumstantial evidence, we use the *McDonnell Douglas/Burdine* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed 2d 207 (1981). Under this framework, the plaintiff must first establish "a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). The employer then bears the burden to show a legitimate and non-discriminatory reason for the employment action. *Id.* If this burden is met, then the presumption is rebutted and the burden shifts back to the plaintiff to show the proffered reason was a pretext for discrimination. *Id.*

To establish a *prima facie* case for wrongful termination, the plaintiff must prove that (1) he belongs to a protected class, (2) he was subject to an adverse employment action, (3) the employer treated similarly-situated employees outside his protected class more favorably, and (4) he was qualified for the job. *Id.* at

5

1091 (citations omitted). To make a comparison to similarly-situated employees, the plaintiff must show he is similarly-situated in all relevant respects to those employees. *Id.* Furthermore, it is necessary to consider whether they are involved in or accused of similar conduct and disciplined in different ways. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).

Here, Carter argues that Bowman's comment regarding Carter's brother constituted direct evidence of discrimination. However, Carter did not make this argument in his response to CSI's motion for summary judgment, his supplement to his response, or in his objection to the magistrate's recommendations. Carter merely discussed the comment in his objection, but he did not argue that it was direct evidence of discrimination. Arguments "not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citations omitted).

Using the *McDonnell Douglas/Burdine* framework for establishing circumstantial evidence of discrimination, Carter satisfied the first three prongs of the *prima facie* case. He belongs to a protected class and he was subjected to an adverse employment action when he was terminated. As to the third prong, Carter must establish that CSI treated similarly-situated white employees more favorably.

6

Viewing the facts most favorable to Carter, a reasonable person could find there were three employees who were injured on-the-job, who reported the injury soon thereafter, and were not required or asked to take a drug test. Therefore, in analyzing the arguments as Carter framed the case, he raised a question of fact as to his *prima facie* case.

However, CSI offered a legitimate, nondiscriminatory reason for Carter's termination, namely, his refusal to submit to the required drug test after Carter reported his on-the-job injury. Carter offered insufficient evidence to indicate that CSI's proferred reason for terminating him was a pretext for discrimination. Although Carter disputes that he refused to submit to the drug test, he did not present any evidence that he submitted to a drug test at any time after the incident. Consequently, Carter failed to rebut CSI's assertion that he was terminated for refusing to submit to a drug test.

Accordingly, the district court properly granted summary judgment to CSI.

Subsequent to our original review of this appeal, Carter filed a petition for rehearing. In his petition for rehearing, Carter argued that he did take a drug test at the emergency room. He submitted new evidence for us to review that the district court never had the opportunity to examine and that is not a part of the district court record. This new evidence consists of copies of Carter's emergency

7

room medical record, which indicates that he visited the emergency room on the day of the accident, and that the medical staff were going to "check on need for drug and alcohol testing." Whether Carter actually did submit to a drug test at the emergency room is a factual question, which we will not review on appeal. Our precedent is clear:

> [A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court. The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions – particularly fact-bound issues – that district courts never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.

See Access Now, Inc., 385 F.3d at 1331 (internal citations omitted).

**AFFIRMED.**