[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11642
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-03999-JEC


BILLY WOODS,

Plaintiff-Appellant,

versus

CENTRAL FELLOWSHIP CHRISTIAN ACADEMY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 26, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Billy Woods, proceeding pro se, appeals the district court's grant of summary judgment in favor of defendant-appellee Central Fellowship Christian Academy in his race-based employment discrimination suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. After review, we affirm.

## I.  BACKGROUND FACTS

We begin by setting forth the relevant background facts.  We base our description of the facts on the undisputed evidence in the record when the district court ruled.

### A.    Woods's Employment with Central Fellowship Christian Academy

Defendant Central Fellowship Christian Academy ("CFCA") is a private Christian school located in Macon, Georgia, and is affiliated with the Central Fellowship Baptist Church, also in Macon.

Plaintiff Woods, a black male, is a licensed educator in Georgia, holding a Bachelor of Arts degree in Biology from Talladega College and a Master of Divinity degree from Boston University.  From 1995 until 2009, Woods worked intermittently as a teacher in Atlanta-area public schools.  On May 31, 2009, plaintiff Woods submitted an application to CFCA for a position as a "Science Teacher."

2

CFCA decided to hire Woods, and, a few days later, Woods and CFCA entered into a written employment contract. The contract provided that Woods's employment would last one year from August 1, 2009 until July 31, 2010, during which time, Woods would receive an annual salary of $30,921.00.

In the employment contract, CFCA agreed not to terminate Woods "without providing reasonable and adequate grounds for dismissal . . . based on incompetence and/or fitness to perform assigned duties and/or failure to uphold standards, rules, and regulations." However, there was an exception to this provision authorizing CFCA to terminate Woods "in situations[] which [CFCA] deems to be a financial emergency for [CFCA]."

Woods began his employment as the contract provided. During the 2009-2010 school year, Woods taught: (1) one class of anatomy; (2) one class of physics; (3) one class of Bible; and (4) two classes of physical science. He also supervised a session of athletic study hall.

Woods joined a staff of 64 employees for the 2009-2010 school year. Woods was the only black employee that year. The staff's only other minorities were a Hispanic high school teacher (in the foreign language department) and an Asian high school teacher (like Woods, in the science department).

**B.    CFCA's Declining Enrollment and the 2009 Layoffs**

3

When CFCA hired Woods, the school was losing students. During the 2005-2006 school year, CFCA's student population was 445. By the 2008-2009 school year, that number had dropped to 380, with the figure having shrunk each year.

As a result, CFCA encountered financial troubles. In December 2008, CFCA's Board of Directors (the "Board") learned that the school faced a "[b]udget [d]eficit" that was "getting larger due to a decrease in enrollment." At that meeting, the Board voted to implement "[s]taff [c]uts to achieve approximately $10,000 monthly expenses reduction."

Accordingly, in January 2009, CFCA laid-off ten employees because "low enrollment made it impossible to carry [the school's] large staff." Of the employees laid-off at that time, six were teachers. One of those six teachers had 39 years' experience, one had 38 years' experience, one had 17 years' experience, one had 10 years' experience, and two had less than 3 years' experience. In January 2009, the Board also terminated the school's Administrator, who had 24 years' experience and was receiving an annual salary of $73,806.00. Each of the ten employees laid-off in January 2009 was white.

C.    **CFCA's Financial Difficulties During the 2009-2010 School Year**

The school's cash flow struggles persisted into the next school year. For the 2009-2010 school year, CFCA expected to have an enrollment of 380 students, and

it budgeted accordingly.  However, only 330 students enrolled.  As a result, the school encountered a budget shortfall of $25,000 per month.  During the first part of the year, CFCA met its expenses by reducing spending on equipment, utilities, supplies, and materials.

By December 2009, CFCA was no longer able to extract savings from its operating budget.  On December 9, 2009, the Board decided to reduce all employees' salaries by ten percent, hoping to achieve savings of $10,459 per month.

## D.    2010 Layoffs of Plaintiff Woods and Other CFCA Employees

This measure did not fix the budget problems.  Thus, on March 31, 2010, the Board of Directors considered additional money-saving measures, specifically, laying-off more staff members.  At that meeting, the Board learned that the school's former Interim Administrator and Principal had been relieved of her duties because CFCA could "no longer support the amount of administrative personnel that [it] began [the] school year with."

The Board then discussed other positions that could be immediately eliminated.  The minutes noted that the Board "review[ed] . . . all administrative positions and potential work-arounds to back fill the critical roles of each position."  After doing so, the Board agreed to allow CFCA's new Administrator to "delete" six positions: (1) "Elementary School Vice Principal"; (2) "High School

5

Vice Principal"; (3) "One High School Science Teacher"; (4) "Dean of Students"; (5) "High School Secretary"; and (6) "Athletic Director."  Plaintiff Woods was the "One High School Science Teacher" whose position was "delete[d]."  The Board voted to terminate four of the affected employees, including plaintiff Woods, the Elementary School Vice Principal, the High School Secretary, and the Athletic Director.

The following criteria determined which positions the Board eliminated: (1) "the . . . impact upon the students and their education" from the loss of a position; (2) the responsibilities applicable to each position; and (3) the abilities of other staff members to cover a deleted position's duties.  Woods's position met these criteria because, by the spring semester, CFCA had removed Woods from the anatomy class and the only science classes he taught were "2 classes of Earth Science and 1 class of Physics."  CFCA "could cover those courses with another teacher or [its] Dean of Students."  Thus eliminating Woods "met the criteria of minimal impact on the students/education process."

The next day, CFCA's new Administrator, Jeremiah Sattazahn, gave Woods a letter informing him of the Board's decision.  Sattazahn wrote that "[b]ecause of the extremely tight cash flow at Central Fellowship Christian Academy, there are many scenario's [sic] being considered at this time.  Closure is not one of those options.  Reduction of expenditures is our first alternative."  The letter then

informed Woods that "effective immediately, on this 1st day of April 2010, you have been relieved of your position as High School Science teacher."  Although "[l]ay offs are never desired," the letter stated, CFCA's present financial position" left the school's Board and administrators with "no choice but to take this step with reductions."

## E.    The Other Employees Terminated in April 2010

As noted, in April 2010, the Board terminated other employees in addition to plaintiff Woods, including: (1) the elementary school Vice Principal, a white female who had 13 years' experience and was receiving a salary of $28,385.00; (2) the Athletic Director, a white male who had 10 years' experience and was receiving a salary of $50,957; and (3) the high school secretary, a white female who had 3 years' experience and was receiving a salary of $17,505.00. [1]

Notably, both of CFCA's other two minority employees returned to their positions the following school year.

## II.  PROCEDURAL HISTORY

---

[1]The Interim Administrator is also listed on a record entitled "Information concerning Employee Lay-offs over the past 2 years." However, in an interrogatory response, defendant CFCA stated that it had terminated the Interim Administrator due to "[d]ifferent philosophical beliefs." The minutes of the March 31, 2010 Board of Directors meeting (where the Board voted to implement the layoffs) reveal that the Interim Administrator was terminated on March 26, 2010.

Although the minutes state that the Board informed the Interim Administrator that she was being fired due to financial reasons, the minutes do not state whether this was the actual reason for the termination. In light of this conflicting record, we do not consider the Interim Administrator alongside plaintiff Woods and the other three employees terminated in April 2010.

## A.    Woods's Administrative Filings

Less than two months after CFCA terminated him, Woods contacted the Equal Opportunity Employment Commission ("EEOC").  Woods alleged that he was "the only African-American who was laid off in the high school of the academy" and that he was "no less qualified and [had] no less seniority than some who were retained."  Woods pointed out that, as a result of his termination, there were "[n]o African-Americans . . . currently on the high school faculty."

Thereafter, Woods submitted a formal charge of discrimination.  In the charge, Woods repeated his earlier allegations and concluded that he "was discriminated against due to [his] race (African-American), in violation of Title VII of the Civil Rights Act of 1964, as amended."  More than a year after Woods filed his charge, on September 27, 2011, he received a right to sue letter from the EEOC.

## B.    Woods's Title VII Complaint

Thereafter, Woods filed a pro se Title VII complaint in the Northern District of Georgia.  Woods alleged that CFCA terminated him because of his race and that "[s]imilarly-situated non-African-American employees with equal or less seniority were not laid off."  Woods requested $51,308.00 in backpay, as well as $10,000 "for related anguish and stress" and $350 for court costs.

## C.    CFCA's Motion for Summary Judgment and Woods's Response

8

Following discovery, CFCA moved for summary judgment.  CFCA made three arguments; specifically, that: (1) because Woods's position as a high school science teacher was a "religious position," CFCA's termination of Woods's employment fell under the the "ministerial exception" to Title VII, first recognized by the Supreme Court in <u>Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.</u>, 565 U.S. __, 132 S. Ct. 694 (2012); (2) Woods had not established a prima facie case of racial discrimination; and (3) even if Woods had established a prima facie case, CFCA had offered a legitimate, non-discriminatory reason for terminating Woods, and Woods had not shown that this reason was a pretext for unlawful discrimination.

In opposition to CFCA's summary judgment motion, Woods responded that: (1) the ministerial exception did not apply because he had "entered into a legitimate contract following the approval of an application . . . with the understanding that the school does not discriminate based on race"; and (2) he had established a prima facie case by showing that he was "laid off when no other full-time teachers in the school were laid off."

## D.    The District Court's Grant of CFCA's Summary Judgment Motion

Thereafter, a magistrate judge issued a report and recommendation ("R&R") recommending granting CFCA's summary judgment motion.  The magistrate judge concluded that "Woods'[s] position [fell] under the ministerial

9

exception to Title VII."  Alternatively, the magistrate judge determined that Woods had not established a prima facie case of race-based discrimination because he had "failed to present any evidence of similarly situated non-African American individuals who were treated differently than him."  The magistrate judge further advised that, even if Woods had established a prima facie case, he had not rebutted CFCA's legitimate, non-discriminatory reason for terminating him.

Woods objected to the R&R.  The district court overruled Woods's objections, adopted the magistrate judge's recommendations, and granted the summary judgment motion.

Woods timely appealed.

### III.  DISCUSSION

We review the award of summary judgment in light of our Title VII precedent about a prima facie case and pretext.  Because we determine that the district court properly granted summary judgment in light of these well-established principles, we need not consider the district court's ruling on Hosanna-Tabor and the ministerial exception.[2]

---

[2]We review de novo a district court's grant of summary judgment and draw "all inferences and review all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (internal quotation marks omitted).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (internal quotation marks omitted).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).  However, "liberal pleading does not

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

A plaintiff can establish a Title VII claim using either direct or circumstantial evidence.  Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).  When a plaintiff "offers direct evidence [of discrimination] and the trier of fact accepts the evidence, then the plaintiff has proven discrimination."  Id.  Woods offered no such direct evidence here.

Instead, Woods sought to establish his discrimination claim by offering only circumstantial evidence.  Thus, we analyze Wood's claim under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Under this approach, a plaintiff must first present a prima facie case of discrimination, thereby creating a presumption of discrimination.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998).

If the plaintiff does so, the employer must rebut this presumption by offering "legitimate, nondiscriminatory reasons for the employment action."  Id.  "If the

require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." Id.

At that point, the plaintiff's burden of rebutting the defendant's explanation "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." Mayfield v. Patterson Pump Co.,101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks omitted).

In a case like this one involving "a discharge as part of a reduction in force," a plaintiff may establish a prima facie case by showing: (1) "that he was a member of a protected group and was adversely affected by an employment decision"; (2) "that he was qualified for his own position or to assume another position at the time of the discharge"; and (3) "that his employer intended to discriminate against him in making the discharge decision." Standard, 161 F.3d at 1331.

Here, Woods did not establish a prima facie case because he failed to offer "sufficient evidence from which a rational fact finder could conclude" that CFCA intended to discriminate against him in deciding to terminate his position without offering him an alternative position. See id. The Board meeting minutes showed that, when the Board decided to lay-off Woods, its members did not discuss Woods's race or the race of any other affected employee. Likewise, there is no mention of race in the termination letter sent to Woods. Woods points to no other

12

evidence from which a court could draw an inference that CFCA considered race in its decisionmaking process.

Woods argued he met his initial burden by showing that similarly situated non-minority employees were treated differently. Woods is wrong. When a Title VII plaintiff attempts to show discriminatory intent by pointing to non-protected class members treated differently, the proffered comparator "must be nearly identical to the plaintiff." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). Woods argued before the district court that "none of the full-time teachers who were hired at the same time or after the Plaintiff (similarly-situated, non-African-American employees) were laid off at the time that the Plaintiff was laid off." However, this statement does not identify any specific comparator. To the extent that Woods did refer to specific individuals—the persons who taught Woods's classes in his place—Woods offered nothing more than conclusory statements that those persons were similarly situated to him.

Even if Woods had made a prima facie showing, summary judgment was nevertheless appropriate. CFCA rebutted Woods's prima facie case with a legitimate, race-neutral reason for terminating Woods. Specifically, the record established that CFCA faced a financial crisis causing it to either lay-off staff members or close. Notably, CFCA implemented numerous cost-saving measures before it resorted to layoffs. Once CFCA's Board decided to lay-off staff

members, it adopted race-neutral criteria for identifying positions to eliminate. The record contained a legitimate, non-discriminatory explanation of how the Board concluded that Woods's position satisfied these criteria, and thus why the Board decided to lay off Woods specifically, along with three other staff members. In light of the record, CFCA easily satisfied its "exceedingly light" burden of showing a valid, non-racial reason for its action, even if Woods established a prima facie case.  See Vessels v. Atlanta Ind. Sch. Sys., 408 F.3d 763, 770 (11th Cir. 2005) (internal quotation marks omitted).

After CFCA met its burden of production, Woods failed to show that CFCA's proffered explanation for its action was a pretext for race discrimination. Instead, Woods responded to CFCA's summary judgment motion with only conclusory allegations of discrimination, which we have previously held are inadequate to establish pretext, particularly in the face of a detailed record supporting an employer's action, like the record here.  See Mayfield, 101 F.3d at 1376–77 ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext . . . where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." (internal quotation marks and alterations omitted)).

For example, Woods conceded that, according to his termination letter, CFCA's financial condition was the reason for his being terminated.  Nevertheless

14

Woods "believe[d] that the statement [in the letter] was an attempt to cover discrimination which was the true motive for [his] layoff."  Similarly, after CFCA described its dwindling enrollment and the rounds of layoffs preceding Woods's termination, Woods stated only that these facts were "irrelevant."  Woods also categorized CFCA's tuition shortfalls and other financial problems as "misleading" facts because CFCA had other sources of income.  Even if Woods's unsupported statement was true, it did not establish that CFCA was not experiencing a financial crisis when it terminated Woods.  CFCA's possible ability to address the budget shortfalls differently does not lead to the conclusion that CFCA decided to lay-off employees (pursuant to race-neutral criteria) as a pretext for discriminating against Woods.  To conclude otherwise would amount to "second-guessing a reasonable decision by [CFCA]," which we may not do.  See Wilson, 376 F.3d at 1091.

## IV.  CONCLUSION

In light of the foregoing, we affirm the district court's award of summary judgment to defendant CFCA.

**AFFIRMED.**

15