**Wen LIU, Plaintiff,**

v.

**UNIVERSITY OF MIAMI, School of Medicine, Defendant.**

**CASE NO. 13–22187–CIV–ZLOCH**

United States District Court, S.D. Florida.

Signed August 28, 2015

Charlotte Fernée Kelly of the Fernée Kelly Law Firm, LLC, Tampa, Florida, for Plaintiff.

Eric D. Isicoff, Teresa Ragatz, Christopher M. Yannuzzi, Esq., Isicoff, Ragatz & Koenigsberg, Miami, Florida, for Defendant.

## ORDER

WILLIAM J. ZLOCH, District Judge

THIS MATTER is before the Court upon the Report and Recommendation (DE 111) filed herein by United States Magistrate Judge Patrick M. Hunt and upon Defendant The University of Miami's Motion For Final Summary Judgment (DE 71). The Court has conducted a *de novo* review of the entire record herein and is otherwise fully advised in the premises.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Wen Liu's Objections (DE 118) be and the same are hereby **OVERRULED;**

2. The Report and Recommendation (DE 111) filed herein by United States Magistrate Judge Patrick M. Hunt be and the same is hereby approved, adopted and ratified by the Court; and

3. Defendant University of Miami's Motion For Final Summary Judgment (DE 71) be and the same is hereby **GRANTED;** and

4. Final Judgment will be entered by Separate Order.

**DONE AND ORDERED.**

## REPORT AND RECOMMENDATION

PATRICK M. HUNT, United States Magistrate Judge

This matter is before this Court on Defendant's [University of Miami] Motion for Final Summary Judgment filed on February 20, 2015. ECF No. 71. The Honorable William J. Zloch referred to the undersigned all non-dispositive, pretrial matters for disposition and all dispositive, pretrial matters for a Report and

Recommendation. ECF No. 49; *see* 28 U.S.C. § 636(b); *see also* S.D. Fla. L.R., Mag. R. 1. On June 18, 2015, the undersigned conducted a hearing on the above-referenced Motion. The undersigned has carefully reviewed Defendant's Motion, Plaintiff's Response, Defendant's Reply, the entire court file, oral argument of counsel and applicable law. Based thereon, it is respectfully recommended that this Court GRANT Defendant's Motion for Final Summary Judgment.

## I. BACKGROUND

On June 18, 2013, Plaintiff, Wen Liu, brought this civil action alleging five claims against the University of Miami School of Medicine. In Counts I, II, and III of Plaintiff's Complaint, ECF No. 1, Plaintiff alleges racial and national origin discrimination, in violation of the Florida Civil Rights Act (FCRA), 42 U.S.C. § 1981 and Title VII of the Civil Rights Act (Title VII). In Count IV, Plaintiff alleges retaliation in violation of Title VII and, finally, in Count V, Plaintiff alleges a violation of her rights under the Family and Medical Leave Act (FMLA) based on her assertion that she was wrongfully terminated after taking FMLA leave in October 2012.

On October 31, 2007, the University of Miami offered Plaintiff the position of Assistant Professor on the tenure-earning track in the Department of Epidemiology and Public Health within the University's Leonard M. Miller School of Medicine. ECF No. 70 at 2, ¶ 2. On December 14, 2007, Plaintiff accepted employment with the University by signing the offer letter.

The Defendant's offer letter advised Plaintiff that she would be expected to make normal progress toward tenure. Beginning with the second probationary year, all individuals holding tenure-earning appointments were to be evaluated annually by the voting faculty for the purpose of assessment of progress toward tenure. *Id.* at 3, ¶ 9. Further, Defendant was required to conduct a Special Review of the candidate's progress toward tenure during the candidate's third year for a faculty member holding a tenure-earning appointment and in the year prior to the end of the probationary period. *Id.* at 3, ¶ 10.[1]

Plaintiff's Special Review occurred on March 24, 2011. *Id.* at 3, ¶ 11. The voting faculty completed its first annual review of Plaintiff's progress toward tenure in November 2009. *Id.* at 3–4, ¶ 13.[2] The faculty vote concluded that Plaintiff had not made adequate progress toward tenure. *Id.* The voting faculty completed its second annual review of Plaintiff's progress toward tenure in August 2010. *Id.* at 4, ¶ 15. In assessing whether Plaintiff was making adequate progress toward tenure, all fifteen eligible faculty members who were present voted no. *Id.* Following a conversation with the Chair of her department, Dr. Szapocznik, Plaintiff admits she scheduled a meeting with Dr. Sheri Keitz, the Senior Associate Dean in the University's Office of Faculty Affairs, which occurred over the weekend of March 20, 2011. *Id.* at 5, ¶ 18. During that meeting, Dr. Keitz advised Plaintiff that if the faculty determined during the Special Review that

---

1. The record indicates that, at times, the terms Special Review and Mid–Point Review are used interchangeably. Therefore, the undersigned has used the terms in the manner in which the parties have used them.

2. Plaintiff responds to certain factual allegations indicating she is without knowledge of the facts and, therefore, denies them. The undersigned finds this response improper at this stage in the litigation. Plaintiff cannot simply deny facts because she is without knowledge, but must come forward with evidence disputing the facts or simply indicate that she is without knowledge as to same. Fed. R. Civ. Pro. 56(c); 56(e)(2). Therefore, the undersigned has included those facts for background purposes.

Plaintiff was not making adequate progress toward tenure, Plaintiff's employment would be terminated effective May 31, 2012; that a switch to the research track would be in Plaintiff's best interest; and that if Plaintiff requested an extension of the Special Review date, such request must be made prior to the scheduled Review date and there was no guarantee that the request would be granted. *Id.* On March 21, 2011, at Plaintiff's request, Dr. Keitz memorialized her conversation with Plaintiff in an email. *Id.*

On March 21, 2011, Plaintiff sent a letter to Dr. Szapocznik and Dr. Pantin, the Chair and Vice–Chair of her department, which stated that she "urgently need help to ask for an extension of the mid-point review and also likely to ask for some time of leave of absences since my mom asked me to take her to the hospitals....." ECF No. 70–1 at 36. She further stated "I deeply appreciate your kind considerations to allow me to postpone my mid-point review so that I could have a chance to get back on my feet again." ECF No. 70–1 at 36. No supporting documentation was submitted with this request. ECF No. 70–2 at 4, ¶ 11.[3] On March 22, 2011, Dr. Szapocznik responded in writing to Plaintiff regarding her request for "an extension of [her] probationary period (Mid–Point Review)." ECF No. 70–1 at 37. He indicated that Plaintiff's "personal circumstances though difficult do not rise to the level of hardship that would warrant an extension of [her] probationary period at this time." *Id.* He also indicated, consistent with the process at the School of Medicine, that he would be forwarding both her request and his response to the Office of Faculty Affairs for further processing, and that her Mid–Point Review

would be conducted as scheduled on March 24, 2011.

On March 24, 2011, prior to her Special Review, Plaintiff changed her track from a tenure track position to a position of Research Assistant Professor in the research track. On July 29, 2011, the voting faculty completed its annual review of Plaintiff in her new position and voted unanimously against her reappointment. ECF No. 70 at 7, ¶ 25. On October 7, 2011, Defendant advised Plaintiff in writing that her employment as a Research Assistant Professor "will terminate effective close of business on October 12, 2012. This date reflects twelve months paid notice time as prescribed for your years of service in the *Faculty Manual.*" *Id.* at 8, ¶ 26; ECF 70–1 at 38. (emphasis in original).

In September 2012, Plaintiff submitted a formal request for leave under the FMLA requesting six months of leave from October 2012 through April 2013, past her termination date, which the University granted in light of her illness. In her deposition, Plaintiff concedes that it was the only FMLA form signed by a doctor that she submitted to the Defendant. ECF No. 70–1 at 28. On March 7, 2013, Defendant sent a letter to Plaintiff "confirming the circumstances of [her] medical leave according to the University's leave policy." ECF No. 70–3 at 42. Defendant provided additional non-FMLA paid leave for an additional 90 days to cover the period of time for which Plaintiff did not have sufficient sick or other leave available. The letter also stated as follows:

> [A]t the end of the 6 month leave period, your faculty appointment will end consistent with your letter from the Vice

---

**3.** Plaintiff did not submit an FMLA form signed by a doctor with her request for an extension of time for her Mid–Point Review.

Provost dated October 7, 2011. This letter states that your faculty appointment will terminate on October 12, 2012. However, in recognition of your medical illness, you were granted 6 months of medical leave which will end on April 9, 2013. Your faculty appointment will terminate at close of business on April 9, 2013. *Id.* As a result, Plaintiff's employment with the University ended on April 9, 2013.

On March 23, 2013, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. ECF No. 70–1 at 44. Plaintiff alleged discrimination on the basis of race, national origin and gender. She admits that the box for retaliation on the one page form was not checked, but alleges that she talked about it with the EEOC officer. *Id.* at 26.

Specifically, Plaintiff contends that she was held to different standards than her non-Asian, non-female, non-Chinese counterparts. She argues she was forced to change from the tenured track to the research track during her third year of employment. Plaintiff also states she was given unattainable work goals. She indicates she was the only junior Asian female faculty of Chinese national origin in her department, and that in March 2009 she was given the unattainable goal of preparing five first-authored publications by her evaluation in 2010. She alleges that this shows discrimination on the part of the University. According to Plaintiff, having to do both the data collection for her grant and five first-authored works in one year was an impossible task. The University contends that Plaintiff was terminated due to her poor performance but Plaintiff alleges that the University's position is a pretext. Defendant indicates Plaintiff was advised in 2009 that she needed to have five first-authored publications submitted/accepted by her evaluation in 2010 be-

cause she had "not written any (or close to any) first-authored" works since her arrival at the University in 2008. ECF No. 98–7. Further, Defendant provides undisputed evidence that the publication requirement was the same for all Assistant Professors on the tenure-earning track in her department. ECF No. 101–1 at 2, ¶ 4.

Plaintiff disputes that her work performance was poor. Plaintiff points to her accomplishment of obtaining a $375,000 grant for data collection in her first year as a junior faculty member. She says she complained to administration about this mistreatment and four months after changing from the tenure track to the research track she received her notice that her employment would be terminated. She also argues she was terminated while she was on FMLA medical leave.

Before addressing the merits of these claims, the undersigned must determine if the claims are procedurally barred. Defendant argues that Plaintiff's FCRA and Title VII claims in Counts I, III and IV fail as a matter of law because Plaintiff failed to exhaust her administrative remedies for those claims, since they were not timely filed and retaliation was never presented in the EEOC Charge. Plaintiff seeks to have this Court utilize a different date for her adverse employment action instead of the one Plaintiff provided to the EEOC. She argues that this Court should use the March 7, 2013 letter that extended her FMLA leave as providing a new date for her adverse employment action because it extended her termination date to allow for continuation of her health insurance coverage, even though the letter clearly referred back to the October 7, 2011 termination letter.

Further, Plaintiff also argues that her retaliation claim should be implied by the facts of her Charge or that the retaliation claim should have been included by the

EEOC officer upon whom she relied. Plaintiff argues that "once Plaintiff discussed with the EEOC representative her gender, national origin, and race-based complaints, one would expect the EEOC investigation to grow to include [a retaliation] claim." ECF No. 96 at 11. Plaintiff states that the EEOC representative said that Plaintiff's employer retaliated against her, and that this led Plaintiff to believe retaliation was included in her allegations. ECF No. 98–2 at 80. She essentially states the EEOC officer only had a certain amount of space and Plaintiff relied on him. *Id.* at 86–87. Defendant points out that Plaintiff uses law that has since been clarified by the Eleventh Circuit. Additionally, Defendant states that these assertions are insufficient as a matter of law to salvage her claims based on clear Eleventh Circuit and United States Supreme Court case law addressing these arguments.

With regard to the Section 1981 claim, Plaintiff concedes that no comparator has been identified. Defendant argues that since Plaintiff has failed to show the required comparator element, this claim fails as a matter of law. Plaintiff argues instead that there is a "convincing mosaic" of discrimination. Circumstantial evidence can create a triable issue, even if a plaintiff cannot produce a comparator, if "plaintiff presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). Defendant argues that Plaintiff has also failed to show a convincing mosaic of circumstantial evidence of discrimination, and that summary judgment should be granted.

Finally, with regard to the FMLA claims, Defendant argues that the Court need not address the merits of this claim since it is barred by the applicable two year statute of limitations. Pursuant to 29

U.S.C. § 2617(c)(2), unless an employer acted "willfully" in violating the statute, a plaintiff must bring an FMLA claim within two years of the date of the employer's last alleged FMLA violation. Plaintiff filed this lawsuit on June 18, 2013. Plaintiff concedes that if the two year statute of limitations is applied her FMLA claims are barred, but Plaintiff argues that Defendant's conduct was willful, and that the three year statute of limitations should be applied instead. Plaintiff contends Defendant is liable for FMLA interference and retaliation violations because she states she was denied FMLA leave in 2011 (March 22, 2011) and because in 2013 while on FMLA leave her employment was terminated and she was unable to "save her job because she was receiving treatment for a covered medical condition." ECF No. 96 at 14. Again, Defendant argues this claim is barred by the applicable two year statute of limitations, no willfulness has been shown, and that Plaintiff's final argument that her termination occurred while she was on FMLA leave is unsupported since she was terminated over a year prior to same. Defendant again cites to Eleventh Circuit and United States Supreme Court cases rejecting Plaintiff's positions.

On February 20, 2015, Defendant filed the instant Motion for Summary Judgment arguing that it is entitled to final summary judgment on all claims presented.

## II. ANALYSIS

### A. *Motion for Summary Judgment Standard*

For purposes of a motion for summary judgment, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, this Court "must view all the evidence and the factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party" and "must resolve all reasonable doubts about the facts in favor of the non-movant." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997); *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America,* 894 F.2d 1555, 1558 (11th Cir.1990). Additionally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505.

### B. *Analysis of Claims*

#### i. *Failure to Exhaust Administrative Remedies*

■ As a condition precedent to filing suit, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination. *H & R Block E. Enters., Inc. v. Morris,* 606 F.3d 1285, 1295 (11th Cir.2010). For claims under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the discriminatory act. *Cabrera–Rodriguez v. Sch. Bd. of Miami–Dade Cnty., Fla.,* 2013 WL 1962996, at *2 (S.D.Fla. May 10, 2013) (citing *Maynard v. Pneumatic Prods. Corp.,* 256 F.3d 1259, 1262 (11th Cir.2001)). For claims under the FCRA, a plaintiff must file her administrative charge within 365 days of the

alleged violation. *City of W. Palm Beach v. McCray,* 91 So.3d 165, 172 (Fla. 4th DCA 2012) (quoting Fla. Stat. § 760.11(1)). Claims that are not timely filed are time-barred. *Clarke v. Winn–Dixie Stores, Inc.,* 2007 WL 3011018, at *3 (S.D.Fla. Oct. 12, 2007).

■ Defendant argues that the record is undisputed that Plaintiff failed to timely file her EEOC charge. Defendant was advised in writing on October 7, 2011, that she was being provided a twelve month notice of termination and her employment would terminate effective October 12, 2012. October 7, 2011, is the date Plaintiff listed on her EEOC charge as the latest date on which the alleged discrimination occurred. The Eleventh Circuit has consistently held that "an adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee." *Thomas v. CVS/Pharmacy,* 336 Fed.Appx. 913, 915 (11th Cir.2009) (citing *Del. State Coll. v. Ricks,* 449 U.S. 250, 258, 261–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

■ Moreover, fact-specific case law exists which directly addresses in the university context notice to faculty and the timing of their charges, since professors typically are advised of their termination a year in advance. *See, e.g., Ode v. Omtvedt,* 883 F.Supp. 1308, 1316 (D.Neb.1995) ("the time for filing the EEOC charge began to run when [the professor] was unambiguously notified in writing in June, 1992, that his contract would not be renewed"), *aff'd,* 81 F.3d 165 (8th Cir.1996); *George v. Kan. State Univ.,* 1991 WL 286915, at *1 (D.Kan. Dec. 4, 1991) (professor was required to file his EEOC charge within 300 days after he was advised his contract would not be renewed (internal citations omitted)); *Nichols v. Muskingum Coll.,* 318 F.3d 674, 676–677 (6th Cir.2003) (finding Title

VII claim timely because the professor filed her charge 295 days after she received the notification of non-renewal); *Greenan v. Bd. of Educ. of Worcester Cnty.*, 783 F.Supp.2d 782, 787 (D.Md. 2011) (permitting discrimination claim to proceed because plaintiff's "EEOC complaint was filed within 300 days of the [employer's] decision not to renew her teaching contract"). The case law is clear that it is the date of being advised of the termination that begins the clock for timely filing an EEOC Charge. The United States Supreme Court has clearly stated that the filing limitations period commences at the time the termination decision is made and communicated to Plaintiff even though the last date of employment does not occur until later. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. 498.

In the instant case, since Plaintiff was advised in writing on October 7, 2011, that her employment would be terminated, any charge of discrimination with the EEOC had to be filed within 300 days of that notification (on or before August 2, 2012) and with the FCHR (Florida Commission on Human Relations) within 365 days of that notification (on or before October 7, 2012). Plaintiff did not file her charge until March 21, 2013.

■ At the hearing before the undersigned, Plaintiff argued that the letter dated March 7, 2013, extending Plaintiff's FMLA leave should serve as a new operative date of the adverse action against Plaintiff so that her claims would be deemed timely. ECF No. 98–19. The undersigned finds this argument to be without merit. The letter itself refers back to the October 7, 2011 letter advising Plaintiff of her termination on October 12,

2012. The correspondence clearly states that Defendant was simply allowing Plaintiff to stay on leave for purposes of extending Plaintiff's health insurance coverage through April 9, 2013, the time period Plaintiff's physician requested, since Plaintiff was receiving medical care of which the University was aware. As stated above, Plaintiff only filed a single EEOC Charge on March 21, 2013. In the EEOC Charge, Plaintiff listed the latest date on which discrimination occurred as October 7, 2011. ECF No. 9820. Accordingly, the undersigned finds that Plaintiff's EEOC Charge was not timely filed.

■ Further, Defendant argues that Plaintiff is also barred from asserting her retaliation claim (Count IV) for failure to exhaust her administrative remedies because Plaintiff only listed sex, race and national origin in her EEOC charge and not retaliation. She did not check the retaliation box on her EEOC Charge and no factual allegations in her Charge relate to retaliation. Plaintiff argued that she was forced to change career paths and was told that if she did not change she would be terminated, and this gave notice of a claim for retaliation in her Charge. She further stated that she relied on the EEOC officer, who allegedly told her that she was retaliated against, to put whatever was necessary on the form. However, the Eleventh Circuit has rejected this argument. *Rodriguez v. Sec. of the Dept. of Veterans Affairs*, 605 Fed.Appx. 957 (11th Cir.2015).

The undersigned notes that the Charge is a one page form which Plaintiff signed swearing that she read the contents of the Charge. She concedes that the box for retaliation was not checked on the form. The undersigned finds that no facts regarding retaliation are discussed in the Charge; rather it simply states that Plaintiff believed others received preferential

treatment. Moreover, the statement that the Charge only had a certain amount of space holds no water. The Charge specifically provides that "if additional paper is needed, attach extra sheets." The undersigned finds Plaintiff could have, but did not, include facts supporting retaliation. In fact, the last line of the Charge clearly indicates that Plaintiff was "discriminated against based on [her] Sex/Female, Race/Asian, and National Origin/Chinese" and makes no mention of retaliation.

▮ "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 958 (citing *Gregory v. Georgia Department of Human Res.*, 355 F.3d 1277, 1280 (11th Cir.2004)). Plaintiffs may not raise allegations of new acts of discrimination in the Complaint without exhausting the administrative requirements. *Id.* at 958. The plaintiff in *Rodriguez* argued that facts regarding assignment of duties, performance evaluations and compensation would have adequately presented a claim for hostile work environment. She admitted that mocking was not included in her EEOC Charge, but she contended that her reference to it during her agency interview was sufficient to administratively exhaust her claim. *Id.* at 958. The Eleventh Circuit rejected this position and said that those charges of discrimination were listed as evidencing discrimination based on national origin according to the Charge and the EEOC had no notice

or first opportunity to investigate any other claimed discrimination. Simply referencing other issues without including them in the Charge is insufficient to satisfy the exhaustion requirement. Likewise here, Plaintiff failed to include any facts regarding retaliation in her Charge.

For the above reasons, Defendant seeks summary judgment on Counts I, III and IV. After carefully reviewing the record, the undersigned finds that Plaintiff failed to timely bring her claims in Counts I and III and that no claim for retaliation was presented in the EEOC Charge. Counts I, III and IV are therefore procedurally barred. Accordingly, the undersigned recommends GRANTING Defendant's Motion for Final Summary Judgment on Counts I, III and IV.

### ii. *Substantive Arguments*

▮ Even if Plaintiff had exhausted her administrative remedies and her claims were timely, Defendant argues that it would still be entitled to summary judgment on the discrimination and retaliation claims[4] (Counts I through IV). Discrimination and retaliation cases can be proven either with direct or circumstantial evidence. Since Plaintiff concedes that there is no direct evidence, Plaintiff would need to prove her case through circumstantial evidence and satisfy the *McDonnell Douglas* burden-shifting framework. *Carter v. Bowman*, 172 Fed.Appx. 915, 917 (11th Cir.2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

---

4. Even if this Court were able to address the retaliation claim on the merits, Plaintiff cannot establish retaliation (Count IV) because she would have to show she was engaged in protected activity, she complained of discrimination, her complaint was based on her subjective belief that her employer was engaged in unlawful employment practices; and that her beliefs were objectively reasonable. At oral argument, Plaintiff states she scheduled meetings with her supervisors about her performance and that the emails evidence her complaints of discrimination. However, the record evidence of the emails that Plaintiff references simply show Plaintiff scheduled a meeting but, contrary to Plaintiff's argument at the hearing before this Court, the email does not evidence whether it in fact occurred or what may have been discussed if it did occur. ECF No. 98–14. Meetings regarding Plaintiff's performance do not satisfy the elements to establish retaliation.

L.Ed.2d 668 (1973)). This framework involves three steps: (1) the plaintiff has to establish a prima facie case of discrimination; (2) if plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action; and (3) if the employer does so, the burden shifts back to the plaintiff to show that the reason proffered is a pretext for discrimination. *Id.*

 To establish a prima facie case of discrimination, Plaintiff has to prove four elements: (1) that she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.2000). The plaintiff must identify a specific comparator for the fourth element—not conclusory statements that she was treated differently than members outside of her protected class. *Woods v. Cent. Fellowship Christian Acad.*, 545 Fed.Appx. 939, 945 (11th Cir.2013). Plaintiff admitted during oral argument that she was unable to identify any comparator, a fact that Defendant asserts is fatal to her claim. In fact, the affidavit filed by the Dean of the Department of Epidemiology attests that all the members of the department were given the same requirements of five first-authored works, evidencing that Plaintiff was not treated differently than those in her department. ECF No. 101–1 at 2, ¶ 4. Defendant states that Plaintiff admitted in her deposition that she had no specific knowledge that anyone else outside her protected class was treated more favorably than she was. Rather, she generally refers to everyone else in her department. ECF No. 98–2 at 88–90.

 Defendant argues that since Plaintiff has failed to show the required comparator element, this claim fails as a matter of law. *Corbin v. Town of Palm Beach*, 996 F.Supp.2d 1275, 1285–86 (S.D.Fla.2014) (citing *Silvera v. Orange Cnty. School Bd.*, 244 F.3d 1253, 1259 (11th Cir.2001)) (failure to identify a comparator is fatal to establishing a prima facie case of discrimination). Plaintiff argues instead that there is a "convincing mosaic" of discrimination. Circumstantial evidence can create a triable issue, even if a plaintiff cannot produce a comparator, if "plaintiff presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). However, the Eleventh Circuit has made clear that it

> never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a convincing mosaic of circumstantial evidence from which a jury could find intentional discrimination based on race. To so hold would do away with the usual requirement' that a plaintiff identify a comparator.

*Turner v. Florida Prepaid College Board*, 522 Fed.Appx. 829, 833 (11th Cir.2013). Plaintiff, in the instant case, as in *Turner*, has only provided this Court with her own general assertions of discrimination in her affidavit and her deposition. After taking the facts of this case in the light most favorable to Plaintiff, the undersigned finds that Plaintiff fails to present sufficient circumstantial evidence for a jury to find Plaintiff's termination was motivated by discrimination.

 Additionally, the University states that it had a legitimate reason for terminating Plaintiff since her poor performance was well documented. Federal courts are hesitant to invade professorial employment decisions. *Jiminez v. Mary*

*Wash. Coll.*, 57 F.3d 369, 377 (4th Cir. 1995), *cert. denied*, 516 U.S. 944, 116 S.Ct. 380, 133 L.Ed.2d 304 (1995). It is well established that an employee's poor work performance is a legitimate, non-discriminatory reason for an adverse employment action. *Rio v. Runyon*, 972 F.Supp. 1446, 1460 (S.D.Fla.1997). The decision not to reappoint Plaintiff was a unanimous one. Plaintiff points to the grant she obtained in her first year and two letters of recommendation received by members outside of her department in order to solicit grants to show that her performance was not poor and that this reason was a pretext. However, Plaintiff's perception of her own performance and abilities is irrelevant since the inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of her performance. *Margolis v. Public Health Trust of Miami–Dade Cty.*, 89 F.Supp.3d 1343, 1353–54 (S.D.Fla.2015) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir.1997)). "Ultimately, an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* at 1351. In order to show pretext, the plaintiff must show both that the employer's explanation was false, and that discrimination was the real reason for its decision. *Id.* The employee cannot succeed by simply quarreling with the wisdom of the reason provided. *Id.* Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED as to the Section 1981 claim in Count II.

■■■■ Finally, with regard to the FMLA count (Count V), Plaintiff was advised of her termination almost one year before she asked for and took her FMLA leave in October 2012. An FMLA claim for retaliation requires a causal connection between the protected activity and the adverse employment decision. *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir.2000). The element of causation cannot exist as a matter of law where the termination decision is made before any request for FMLA leave is made. *Hall v. AT & T Mobility Servs.*, 2011 WL 3425642, at *11 (M.D.Fla. Aug. 5, 2011). In the instant case, the Plaintiff was notified of her termination on October 7, 2011, and she requested her FMLA leave in September 2012. Therefore, no FMLA violation can be shown and this claim fails as well.

■■■■ Plaintiff argues that this Court should treat the March 22, 2011 letter denying her request for an extension of her Mid–Point Review as an FMLA leave request evidencing an FMLA interference claim, that is, an employer's outright denial of an employee's substantive rights. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir.2000). The Complaint was filed on June 18, 2013. Even if this Court found the March 21, 2011 letter requested FMLA leave, an FMLA claim would need to have been filed by March 2013. Plaintiff concedes this action would be barred by the normally applicable two year statute of limitations. 29 U.S.C. § 2617(c)(2). Plaintiff asserts that this Court should instead find that the Defendant's actions were willful because Defendant responded to the request the next day, and that the three year statute of limitations for willful violations should be applied. However, after careful review, the undersigned finds no record evidence of willfulness. The term "willful" is not defined in the FMLA.[5] The Supreme

---

5. "Because the FMLA and the FLSA use the term willful in nearly identical contexts, many circuit courts have adopted *McLaughlin's* definition of willful for FMLA purposes." *Stewart v. T–Mobile*, No. 11–3655, 2015 WL 5062447, at *3–4, 2015 U.S. Dist. LEXIS 35477, at *9–10 (N.D.Ala. March 23, 2015).

Court has held in the FLSA context that an employer acts willfully when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... [its actions] should not be ... considered [willful]." *Id.* at 135, 108 S.Ct. 1677 n. 13. The undersigned does not find that Plaintiff has shown that Defendant recklessly violated her rights under the FMLA.

 Moreover, the undersigned finds that this argument fails because the March 21, 2011 letter only states that it is "likely" that Plaintiff would need time to take care of her mother and child and does not place the University on notice that she was in fact seeking leave to do so. Additionally, unlike the FMLA leave request Plaintiff submitted in September 2012, Plaintiff never submitted an FMLA form signed by a doctor as required by the University to put them on notice that this was an FMLA request as opposed to just a request for extension of her Mid–Point Review. Although Plaintiff need not specifically reference the FMLA when requesting FMLA leave, she must put the University on notice that her request is for FMLA leave. The undersigned finds that Plaintiff did not request FMLA leave in her letter dated March 21, 2011, but only suggested that she might need to take leave. The purpose of the letter was to request an extension of her review which Plaintiff was previously advised could be denied. Based on the undisputed facts of the record, no FMLA violation has been demonstrated, and certainly, no willful or reckless violation of the FMLA is presented. As such, summary judgment should be granted on Count V as well using either of the dates that Plaintiff submits.

## III. RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendant's Motion for Final Summary Judgment, ECF No. 71, be GRANTED on all counts.

The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. *See* 28 U.S.C. § 636(b)(1) (providing procedure for review of Magistrate Judge Report and Recommendation). Failure to timely file objections shall bar the parties from a de novo determination by Judge Zloch of any issue covered in the Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. *See Thomas v. Arn*, 474 U.S. 140, 145–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that party waives appellate review of magistrate judge's factual findings that were not objected to within period prescribed by 28 U.S.C. § 636(b)(1) (citing *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981))); *see also Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (holding that under current Eleventh Circuit rule: "[T]he failure to object limits the scope of our appellate review to plain error review of the magistrate judge's *factual findings* [; however,] failure to object to the magistrate judge's *legal conclusions* does not preclude the party from challenging those conclusions on appeal.").

RESPECTFULLY SUBMITTED at Fort Lauderdale, Florida this 21st day of July, 2015.